IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| CHEYENNE MORROW, | ) |
|       Plaintiff, | ) ) ) |
| v. | ) ) ) Cause No. 1:21-CV-237-WCL-SLC |
| CITY OF MARION, INDIANA, OFFICER BLAKE COBURN, GRANT COUNTY SHERIFF'S OFFICE, DEPUTY FLANIGAN, DEPUTY BRAND, and INVESTIGATOR GARY MACDONALD. | ) ) ) ) ) ) |
|       Defendants. | ) |

## DEFENDANTS GRANT COUNTY SHERIFF'S OFFICE, DEPUTY FLANIGAN & DEPUTY BRAND'S BRIEF IN SUPPORT OF THEIR MOTION TO DISMISS

### I.  Introduction.

In her Complaint the Plaintiff, Cheyenne Morrow, seeks to hold the Grant County Defendants liable after she was arrested on Saturday, July 13, 2019 following a routine traffic stop by a Marion Police Officer on a warrant issued by the Jefferson County Superior Court. Unfortunately, according to the Complaint, the Jefferson County Prosecutor's office made an error on the warrant and for some as yet unexplained reason used the Plaintiff's name, birthdate, and home address, when the warrant should have contained the information for another Cheyenne Morrow who lives in Southern Indiana. The Plaintiff was booked into the Grant County Jail on the warrant and remained there until the error was corrected two days later when the courts re-opened on Monday, July 15, 2019.

Ms. Morrow now seeks to hold the Grant County Sheriff's Office and two jail deputies liable under the 4th Amendment and Indiana law for false arrest and imprisonment despite the fact that they had nothing to do with the issuance of the warrant or her arrest.

While sympathizing with what happened to Ms. Morrow due to the alleged errors by Jefferson County, the Grant County Sheriff's Office and its deputies acted appropriately under a valid warrant and there is simply no basis for liability under the facts as alleged in the Complaint.

> In this unfortunate case of mistaken identity, Martinez spent five nights in jail while law enforcement verified his protestations of innocence. In no way do I intend to minimize Martinez's experience. However, while the Constitution requires that authorities take action to investigate a person's claim of mistaken identity, it does not guarantee that the investigation will be perfect. Martinez may disagree with the actions taken by Agent Santiago and Garay, but the undisputed evidence show that the defendants did not ignore Martinez's claims, but investigated them and ultimately secured his release. "'Due process does not require that every conceivable step be taken, at whatever cost, to eliminate the possibility of convicting an innocent person.'" *Baker*, 443 U.S. at 145 (*quoting Patterson v. New York*, 432 U.S. 197, 208 (1977)). On this record, no rational trier of fact could find the defendants' actions amount to a constitutional violation.

*Martinez v. Santiago*, 2021 WL 1733438, * 9 (E.D.Wis. May 3, 2021),

## II. Relevant Facts as Pled in the Complaint.

### A. The Jefferson County Prosecutor's Office Makes a Mistake.

According to the Plaintiff, on January 22, 2016, a Criminal Misdemeanor for "visiting a common nuisance" was filed in the Jefferson Superior Court against a "Cheyenne Morrow" with a date of birth of October 22, 1996, captioned *State v. Cheyenne Morrow*, Cause No. 39D01-1601-CM-000065. (Complaint, ¶¶ 12-13)

These charges were apparently the result of a January 21, 2016, report by the Jefferson County Sheriff's Department (Offense Report 16-0048) which "described the criminal acts of visiting a common nuisance by an individual named Cheyenne Morrow." (Complaint, ¶ 12)

According to the Complaint ""[o]n or around January 22, 2016, criminal charges were issued against the individual named Cheyenne Morrow in the Jefferson Superior Court under cause number 39D01-1601-CM-000065 for visiting a common nuisance." *Id.*, ¶ 13.

"On or around July 19, 2017, a warrant was issued by the Jefferson Superior Court under cause number 39D01-1601-CM-000065 for the arrest of the individual named Cheyenne Morrow for failure to appear. The arrest warrant lists the address for the individual named Cheyenne Morrow as 6945 S. 200 E., Markleville, IN 46056, which is [the Plaintiff Cheyenne] Morrow's home address. … The arrest warrant also lists the date of birth for the individual named Cheyenne Morrow as 10/22/1996, which is [the Plaintiff Cheyenne] Morrow's date of birth." (Complaint, ¶¶ 13-15, 22; parenthetical supplied)

There is no explanation as to how or why Jefferson County mistakenly used the Plaintiff's date of birth and her address on the arrest warrant, other than an indication that the Defendant, Investigator Gary MacDonald of the Jefferson County Prosecutor's Office made the error causing the Jefferson County Superior Court to issue the warrant with the wrong information. (Complaint, ¶¶ 24-27)

### B.      The July 13, 2019 arrest of Cheyenne Morrow.

According to the Complaint, "[o]n or around [Saturday] July 13th, 2019, Morrow was pulled over by [City of Marion] Officer [Blake] Coburn in a routine traffic stop" and he informed her there was an outstanding warrant and "then demanded that Morrow step out of her vehicle … handcuffed Morrow and placed her in his police car… [and] then transported Morrow to the Grant County Jail." (Complaint, ¶¶ 32-41; parenthetical supplied)

### C.     Booking in at the Grant County Jail and release two days later.

"Upon arriving at Grant County Jail, Morrow was classified and assessed by Deputy Flanigan and Deputy Brand" and was placed in the jail based on Officer Coburn's arrest on the outstanding Jefferson County Superior Court warrant." (Complaint, ¶¶ 44-46)  Ms. Morrow claimed that this was a case of mistaken identity; however, since it was Saturday the Court issuing the warrant which contained the Plaintiff's correct name, date of birth and home address was closed, and there was no way to verify the mistaken identity claims with the Jefferson County Superior Court until Monday, July 15, 2019.

On Monday when the Court opened, "[a]fter being informed of these events, Morrow's parents spoke with multiple employees from Grant County and Jefferson County.  Morrow's parents drove to Jefferson County and spoke with Investigator MacDonald, who admitted to them that Officer Coburn and GCSO had indeed arrested and imprisoned the wrong individual." *Id.*, ¶¶ 48-49.

On July 15, 2019, the Jefferson Superior Court issued an Order dismissing the criminal charges against Morrow, vacating the arrest warrant, releasing Morrow from custody of the Grant County Jail, and dropping the criminal matter from the active docket." (Complaint, ¶¶ 50-52)

"GCSO then released Morrow from the Grant County Jail on Monday, July 15, 2019, at approximately 3:00 p.m." (Complaint, ¶ 53)  The Complaint was filed in this case almost two years later on June 25, 2021.

### III.   Standard of Review.

The GCSO and its deputies seek the dismissal of the Complaint as against them under Rule 12(b)(6) of the Federal Rules of Civil Procedure because the Complaint fails to state a claim for which relief can be granted against them.

This Court addressed the applicable standard of review for a Rule 12(b)(6) motion in *AM Gen. LLC v. Demmer Corp.*, 2013 WL 5348484 (N.D.Ind. 2013):  "The court views the facts alleged in the complaint in the light most favorable to the nonmoving party. *N. Ind. Gun & Outdoor Shows, Inc. v. City of South Bend*, 163 F.3d 449, 452 (7th Cir. 1998). However, the court need not ignore allegations in the complaint that undermine the plaintiff's claim, or give weight to unsupported conclusions of law. *Buchanan–Moore*, 570 F.3d at 827. To survive the motion, the complaint must contain enough facts to state a claim for relief that is plausible on its face. *Brooks v. Ross*, 578 F.3d 574, 579 (7th Cir. 2009)." *AM* at *1.

Because the Defendants are also asserting a qualified immunity defense in this motion to dismiss, although the issue of qualified immunity is a question of law for the court (*Mitchell v. Forsyth*, 472 U.S. 511, 528 (1985)), it should be noted that:

> "[A]sserting a qualified immunity defense via a Rule 12(b)(6) motion ... subjects the defendant to a more challenging standard of review than would apply on summary judgment." *Thomas*, 765 F.3d at 1194 (*quoting Peterson v. Jensen*, 371 F.3d 1199, 1201 (10th Cir. 2004)). Under the former, "it is the defendant's conduct as alleged in the complaint that is scrutinized for 'objective legal reasonableness.'" *Behrens*, 516 U.S. at 309. Under the latter, "the plaintiff can no longer rest on the pleadings, and the court looks to the evidence before it (in the light most favorable to the plaintiff) when conducting the [qualified immunity] inquiry." *Id.* (citation omitted).

*Reed v. Palmer*, 906 F.3d 540, 549 (7th Cir. 2018).

## IV.     Discussion.

As noted earlier, in the Complaint filed on June 25, 2021, the Plaintiff alleges that the actions of the Defendants violated her 4th Amendment rights and constituted false arrest and false imprisonment under Indiana law.

**Count I:**     State Law: Intentional Infliction of Emotional Distress (City of Marion, GCSO, MacDonald)

**Count II:**     State Law: False Arrest (City of Marion, GCSO, MacDonald)[1]

**Count III:**     State Law: False Imprisonment (City of Marion, GCSO, MacDonald)

**Count IV:**     Federal Claims brought pursuant to 42 U.S.C. § 1983 – 4th Amendment and/or State Law: Unlawful Seizure (Officer Coburn, Deputy Flanigan, Deputy Brand, and Investigator MacDonald in their individual capacities).

### A.     Federal Claims.

1. § 1983 False Arrest, False Imprisonment and/or Unlawful Seizure claims under the 4th Amendment, due process, or otherwise, pled against the GCSO and/or Deputies Flanigan and Brand individually, are barred as a matter of law.

The United States Supreme Court has addressed and specifically rejected claims identical to those presented in this case. In *Baker v. McCollan*, 443 U.S. 137 (1979) the plaintiff was arrested by a county sheriff pursuant to a valid warrant and was detained in the county jail for three days despite his protests of mistaken identity:

> Leonard McCollan and respondent Linnie Carl McCollan are brothers. Leonard somehow procured a duplicate of Linnie's driver's license, identical to the

---

[1] It is unclear whether the Plaintiff is seeking to assert false arrest and false imprisonment claims in Counts II and III solely under state law, or whether she is also seeking relief under 42 U.S.C. § 1983 as against the municipal entities as well. It appears that she is not; however, even if she were to do so, such claims would be barred under *Monell v. Dep't of Social Services*, 436 U.S. 658, 690 (1978) because the Plaintiff has not alleged the existence of any policy, custom or practice that caused the alleged constitutional deprivation by the GCSO, *i.e.* booking her after her arrest and holding her in the Grant County Jail for two days. In order to state a § 1983 claim against the GCSO the Complaint would have had to contain allegations that an official policy or custom not only caused the constitutional violation, but was "the moving force" behind it. *City of Canton, Ohio v. Harris*, 489 U.S. 378, 389, (1989). Unless there is an unconstitutional policy, there can be no official-capacity liability.

> original in every respect except that, as the Court of Appeals put it, "Leonard's picture graced it instead of Linnie's." In October 1972, Leonard, masquerading as Linnie, was arrested in Potter County on narcotics charges. He was booked as Linnie Carl McCollan, signed various documents as Linnie Carl McCollan, and was released on bail as Linnie Carl McCollan. Leonard's bondsman sought and received an order allowing him to surrender his principal and a warrant was issued for the arrest of "Linnie Carl McCollan."
>
> On December 26, 1972, Linnie was stopped in Dallas for running a red light. A routine warrant check revealed that Linnie Carl McCollan was wanted in Potter County, and respondent was taken into custody over his protests of mistaken identification. The Dallas Police Department contacted the Potter County Sheriff's Department, compared the identifying information on respondent's driver's license with that contained in the Potter County arrest records, and understandably concluded that they had their man. On December 30, Potter County deputies took custody of respondent and placed him in the Potter County Jail in Amarillo. He remained there until January 2, 1973, when officials compared his appearance against a file photograph of the wanted man and, recognizing their error, released him.

*Baker*, 443 U.S. at 140–41.

In the *Baker* case, as in the present case, the individual mistakenly arrested on the valid warrant "brought this damages action 'pursuant to the Fourteenth Amendment to the United States Constitution and . . . [§] 1983.'" *Baker*, 443 U.S. at 141. The Supreme Court made short work of this claim: "[R]espondent's complaint is simply that despite his protests of mistaken identity, he was detained in the Potter County jail from December 30, when Potter County deputies retrieved him from Dallas, until January 2, when the validity of his protests was ascertained. Whatever claims this situation might give rise to under state tort law, we think it gives rise to no claim under the United States Constitution." *Id.*, at 143-44.

Similarly, in *Hill v. California*, 401 U.S. 797 (1971) the Supreme court noted that "[b]ased on our own examination of the record, we find no reason to disturb either the findings of the California courts that the police had probable cause to arrest Hill and that the arresting officers had a reasonable, good faith belief that the arrestee Miller was in fact Hill, or the

7

conclusion that '(w)hen the police have probable cause to arrest one party, and when they reasonably mistake a second party for the first party, then the arrest of the second party is a valid arrest.'" *Id.*, 401 U.S. at 802.

More recently, in *Martinez* the Court was faced with another mistaken identity/delay in release to confirm that the warrant was in error case:

> Martinez further argues that the defendants took unnecessary steps to verify his identity; specifically arguing that identifying information for both men was not needed to determine Martinez's identity. (Pl.'s Resp. to DPFOF ¶ 56.) It was not unreasonable, however, for the defendants to seek identifying information for both Martinez and Rodriguez, in order to ensure that they had the correct person in custody. *See Hernandez v. Sheahan*, 455 F.3d 772, 777–78 (7th Cir. 2006) ("To appreciate the risk of error, one has only to consider the point that Hernandez and his wife made: that very reliable documents (such as a passport) demonstrate that his first name is Emiliano. Yet that's only half the equation. What if Emiliano were indeed the wanted man, but the warrant was in the name of Enrique because Hernandez had put an alias over on the police and prosecutor responsible for the warrant? Sooner or later a prisoner and his family might find a jailer who did not appreciate that the validity of both names (and other details) must be pinned down before it is possible to know whether Emiliano and Enrique Hernandez are the same person. A jailer who did not understand this would make an error, and the error would prove irreparable if the wanted person could not be recaptured.")

*Martinez*, at *8. After noting the 7th Circuit's position on this issue, the District Court dismissed the case noting as follows:

> In this unfortunate case of mistaken identity, Martinez spent five nights in jail while law enforcement verified his protestations of innocence. In no way do I intend to minimize Martinez's experience. However, while the Constitution requires that authorities take action to investigate a person's claim of mistaken identity, it does not guarantee that the investigation will be perfect. Martinez may disagree with the actions taken by Agent Santiago and Garay, but the undisputed evidence show that the defendants did not ignore Martinez's claims, but investigated them and ultimately secured his release. "'Due process does not require that every conceivable step be taken, at whatever cost, to eliminate the possibility of convicting an innocent person.'" *Baker*, 443 U.S. at 145 (*quoting Patterson v. New York*, 432 U.S. 197, 208 (1977)). On this record, no rational trier of fact could find the defendants' actions amount to a constitutional violation.

*Martinez*, at *9.

The present case is no different.  At best, with respect to the GCSO and its deputies, Ms. Morrow alleges only that "[u]pon information and belief, Deputy Flanigan and Deputy Brand failed to consult public information which would have readily demonstrated that Morrow is not the same Cheyenne Morrow for which the arrest warrant was intended to be issued in Jefferson County." (Complaint, ¶ 47)  This allegation is repeated against each of the Defendants, but nowhere does the Plaintiff state what this "public information" is that would have cleared up the alleged error and permitted the GCSO to ignore a validly issued Court warrant and release her. In the face of a validly issued warrant by the Jefferson Superior Court which had the Plaintiff's name, address and birth date on it, a Facebook, Instagram or Twitter account is simply insufficient information to release an individual that has been arrested by another police agency. At a bare minimum verification or action from the issuing Court is necessary.  This took place on the first day possible, Monday, July 15, 2021, and resulted in the release of Ms. Morrow that same day at 3:00 pm. *Id.*. ¶¶ 50-53.  This is clearly reasonable as a matter of law as noted by the Courts in *Baker*, *Hernandez*, and *Martinez* to name a few.

As a consequence, all federal claims presented against the GCSO and/or Deputies Flanigan and Brand fail to state a claim for which relief can be granted and should be dismissed.

2.  Any § 1983 claims against the individual Defendants, Deputies Flannigan and Brand, are further barred by the doctrine of qualified immunity.

Assuming, as noted in Footnote 1, that the only federal claims are contained in Count IV of the Complaint (mistakenly listed as "Count VI") where the Plaintiff seeks to impose liability on "Deputy Flanigan, Deputy Brand … in their individual capacities" under the Fourth Amendment for "the false arrest[2] and unlawful imprisonment of Morrow" these claims are

---

[2] As discussed below in the state law false arrest section, the GCSO and/or its deputies never "arrested" Ms. Morrow.  Rather, the Complaint itself alleges that she was instead arrested by Marion Police Officer Coburn:

9

barred by a qualified immunity.  (Complaint, ¶ 89)

The qualified immunity defense is for law enforcement officers who have been sued under § 1983 in their individual capacities and provides that:  "A police officer is entitled to qualified immunity when his or her conduct does not violate a clearly established statutory or constitutional right of which a reasonable person would have known. *e.g., Kisela v. Hughes*, 138 S. Ct. 1148, 1152 (2018) (*per curiam*). * * * Consequently, in an excessive force case, 'police officers are entitled to qualified immunity unless existing precedent 'squarely governs' the specific facts at issue' and makes clear that the force employed by the officers was impermissible. *Id.* (*quoting Mullenix*, 577 U.S. at 13)."  *Est. of Green v. City of Indianapolis*, 2021 WL 1904871, at *4 (7th Cir. May 12, 2021).

The qualified immunity defense is a powerful shield that "protects all but the plainly incompetent or those who flout clearly established law." *District of Columbia v. Wesby*, 583 U. S. ——, ——, 138 S.Ct. 577, 589 (2018). *See also Lovett v. Herbert*, 907 F.3d 986, 991 (7th Cir. 2018). "[A] state official is protected by qualified immunity unless the plaintiff shows: '(1) that the official violated a statutory or constitutional right, and (2) that the right was "clearly established" at the time of the challenged conduct.'" *Id*. (quotation omitted). Therefore, the constitutional right must be identified in a particularized sense with respect to the circumstances of the alleged violation so that a reasonable official would understand that what he or she is doing violates that right. *Id*. at 992 (*citing Mullenix*, 136 S.Ct. 308).

---

"Officer Coburn informed Morrow that she had a warrant out for her arrest for visiting a common nuisance in Jefferson County. * * * Officer Coburn then demanded that Morrow step out of her vehicle, to which Morrow complied.  Officer Coburn then handcuffed Morrow and placed her in his police car." (Complaint, ¶¶ 34, 39-40)  The Complaint thus makes it clear that Marion Police Officer Coburn, not GCSO Deputies Flannigan or Brand, arrested Ms. Morrow.  As a consequence the only claim against Deputies Flannigan and Brand that remains under federal law is for unlawful imprisonment.

>The "clearly established" standard also requires that the legal principle clearly prohibit the officer's conduct in the particular circumstances before him. The rule's contours must be so well defined that it is "clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier v. Katz*, 533 U.S. 194, 202 (2001). This requires a high "degree of specificity." *Mullenix v. Luna*, 577 U.S. ——, ——, 136 S.Ct. 305, 309, 193 L.Ed.2d 255 (2015) (per curiam). We have repeatedly stressed that courts must not "define clearly established law at a high level of generality, since doing so avoids the crucial question whether the official acted reasonably in the particular circumstances that he or she faced." *Plumhoff*, supra, at 2023 (internal quotation marks and citation omitted). A rule is too general if the unlawfulness of the officer's conduct "does not follow immediately from the conclusion that [the rule] was firmly established." *Anderson, supra*, at 641, 107 S.Ct. 3034. In the context of a warrantless arrest, the rule must obviously resolve "whether 'the circumstances with which [the particular officer] was confronted ... constitute[d] probable cause.'" *Mullenix, supra*, at 309 (*quoting Anderson, supra*, at 640–641, 107 S.Ct. 3034; some alterations in original).

*Wesby*, 138 S.Ct. at 590.

Thus in order to overcome the immunity Ms. Morrow must be able to point to a case on very similar facts and circumstances that held that the deputies' conduct was clearly unlawful. The problem for the Plaintiff is that, as discussed in detail in the preceding subsection, both the Supreme Court, the 7th Circuit, and various lower courts have explicitly found that conduct identical to that alleged against Deputies Flannigan and Brand was reasonable as a matter of law. Therefore the claims against Deputies Flannigan and Brand are barred by the qualified immunity and should be dismissed for this reason as well, and the two deputies should be dismissed from this case entirely.[3]

---

[3] There is no basis to sue the individual Deputies in their individual capacities under Indiana law since it is alleged that at all times they were acting within the course and scope of their employment. (Complaint, ¶¶ 8-9) The Indiana Tort Claims Act ("ITCA"), I.C. § 34-13-3-1 *et. seq.*, governs state law tort claims against governmental entities and public employees. *Bushong v. Williamson*, 790 N.E.2d 467, 472 (Ind. 2003). "Among other things the statute provides substantial immunity for conduct within the scope of the employee's employment." *Id.* Specifically, "[a] lawsuit alleging that an employee acted within the scope of the employee's employment bars an action by the claimant against the employee personally." I.C. § 34-13-3-5(b); *see also Ball v. City of Indianapolis*, 760 F.3d 636, 645 (7th Cir. 2014) ("Under the [ITCA], there is no remedy against the individual employee so long as he was acting within the scope of his employment.").

11

### C. State Law Claims.

In addition to the federal claims discussed in the preceding section, the Plaintiff also asserts several state law claims including intentional infliction of emotional distress (Count I), false arrest (Count II), and false imprisonment (Count III) against the GCSO.

#### 1. False Arrest/Imprisonment.

In Counts II and III, although the Plaintiff acknowledges in her Complaint that she was arrested and imprisoned under a lawful (if mistaken) warrant issued by the Jefferson County Superior Court, and that the GCSO employees were acting pursuant to that warrant when she was booked into the Grant County Jail, she nevertheless argues that she was falsely arrested and falsely imprisoned by the GCSO and its deputies.

##### i. *False Arrest.*

Under Indiana law, as mentioned earlier in Footnote 2, neither the GCSO nor Deputies Flannigan or Brand "arrested" Ms. Morrow and thus they cannot be liable for "false arrest" based on the allegations contained in the Complaint. The Complaint alleges that Ms. Morrow was instead arrested by Marion Police Officer Coburn. (Complaint, ¶¶ 34, 39-40)

According to the Indiana Supreme Court, "[a]n arrest … is 'the taking of a person into custody, that he may be held to answer for a crime.' Ind.Code § 35–33–1–5 (2008). And we have said before that 'an arrest occurs when a police officer interrupts the freedom of the accused and restricts his liberty of movement.' *Sears v. State*, 668 N.E.2d 662, 667 (Ind.1996) (finding arrest when defendant was handcuffed and placed in patrol car)." *Kelly v. State*, 997 N.E.2d 1045, 1051 (Ind. 2013). Thus under Indiana law Ms. Morrow was arrested when Officer Coburn handcuffed her and placed her in his police car. Neither the GCSO nor its deputies arrested Ms. Morrow and thus could not, as a matter of law, have "falsely arrested" her and thus to the extent the

Complaint (especially Counts II & IV) alleges otherwise, those false arrest clams must be dismissed.[4]

### ii.    False Imprisonment.

In contrast to the false arrest claims, there is no real dispute that the GCSO held Ms. Morrow in the Grant County Jail for two days (Saturday evening, Sunday, and Monday morning) until the warrant was cleared by the Jefferson County Superior Court on Monday afternoon.

"The tort of false imprisonment occurs when there is an (1) unlawful (2) restraint (3) upon one's freedom of movement or the deprivation of one's liberty (4) without consent." *Donovan v. Hoosier Park, LLC*, 84 N.E.3d 1198, 1207 (Ind.Ct.App. 2017).  There is no dispute that the Plaintiff was restrained without her consent, so the focus here is on whether the act of booking her into the Grant County Jail was "unlawful".  Claims for false arrest and false imprisonment are generally reviewed together under the same standards:  "[W]here a claim for false imprisonment stems from an alleged false arrest, 'we need not make a separate analysis for the former.'" *Id.*, 84 N.E.3d at 1207.

> A defendant may be liable for false arrest when he or she arrests the plaintiff in the absence of probable cause to do so. *Conwell v. Beatty*, 667 N.E.2d 768, 775 (Ind.Ct.App.1996). Probable cause for arrest is demonstrated by facts and circumstances known to the arresting officer which would warrant a person of reasonable caution and prudence in believing that the accused had committed or was committing a criminal offense. *Id.*; *Street*, 660 N.E.2d at 1056. Thus, if the plaintiff in a false arrest action fails to demonstrate the absence of probable cause, or if the record as a whole reflects probable cause for the arrest, then the plaintiff's case must fail. *Conwell*, 667 N.E.2d at 775.

*Miller v. City of Anderson*, 777 N.E.2d 1100, 1104–05 (Ind.Ct.App. 2002).

---

[4] It should also be noted that under Indiana law probable cause negates a false arrest claim, and a validly issued warrant by a Court is by definition probable cause for an arrest.  *See e.g. Nevil v. State*, 132 N.E.3d 923 (Ind.Ct.App.), transfer denied, 137 N.E.3d 925 (Ind. 2019) ("We decline to hold that the arrest of an individual based upon a warrant in the NCIC database is "warrantless." To the contrary, an arrest based on a warrant found in the NCIC database is, by definition, not a warrantless arrest.")

In the present case the Plaintiff cannot meet her burden "to demonstrate the absence of probable cause" to book her into the Grant County Jail because a probable cause determination had already been made by the Jefferson County Superior Court when it issued the warrant for arrest with the Plaintiffs' name, birthdate, and address on it and the GCSO and its deputies were justified in relying on it.

Moreover, so long as the GCSO and its deputies acted in a good faith reliance on the lawfully issued warrant, they are also entitled to an affirmative "good faith" defense barring misidentification claims like these:

> [T]he affirmative defense of good faith shields the arresting officer from liability for an unlawful seizure based upon a mistaken identification of the person named in the attachment or warrant if the officer has exercised reasonable diligence and care in ascertaining identity before serving the warrant. *Barnes v. Wilson* (1983), Ind.App., 450 N.E.2d 1030, 39 A.L.R. 4th 699 (good faith defense where name of person arrested identical or similar to name on body attachment); *Mildon v. Bybee* (1962), 13 Utah 2d 400, 375 P.2d 458 (good faith defense where person arrested is not similar in name or appearance to person named on warrant but other fact or circumstance causes an identification of person arrested as person named on the process); 32 Am.Jur.2d False Imprisonment § 85 (1982).

*Delk v. Bd. of Comm'rs of Delaware Cty.*, 503 N.E.2d 436, 439 (Ind.Ct.App. 1987).  *See also Garrett v. City of Bloomington*, 478 N.E.2d 89, 94 (Ind.Ct.App. 1985) ("The burden of proof, then, is on the plaintiff to prove the officer's lack of good faith or the lack of reasonable cause to believe he was acting constitutionally.").

In *Barnes v. Wilson*, 450 N.E.2d 1030 (Ind.Ct.App. 1983) the Court noted the existence of the good faith defense in the specific contact of a mistaken identity false arrest/imprisonment case:

> There are generally two views concerning a police officer's civil liability for false imprisonment arising from the service of a warrant, where the warrant is mistakenly served on an individual having the same name, or a name similar to that stated on the warrant. *See generally* 32 Am.Jur.2d False Imprisonment § 85

14

> (1982); Annot., 10 A.L.R.2d 750 (1950). One school of thought holds that the officer acts at his peril in serving a warrant. *See, e.g., Schnaufer v. Price*, (1939) Tex.Civ.App., 124 S.W.2d 940. The other, more prevalent view, however, would relieve the officer of liability where he had a good faith belief that the person arrested and the person named in the warrant were identical, and where no information was presented to the officer which would tend to negate his belief or indicate that further investigation was required. See, e.g., Filer v. Smith, (1893) 96 Mich. 347, 55 N.W. 999; Mildon v. Bybee, (1962) 13 Utah 2d 400, 375 P.2d 458. A search by this court has failed to discover any Indiana cases on point. We are, therefore, faced with a question of first impression in this state.
>
> In addressing that question, this court finds itself persuaded by the good faith position advanced by appellant. Adoption of the position that the officer acts at his peril could lead to situations in which the mistakenly-detained arrestee would remain silent as to his true identity and subsequently recover in a civil suit for damages. The good faith position, on the other hand, would require the detainee to bring to the officer's attention facts which would tend to show that the wrong individual had indeed been detained. Absent such action, the arrestee would effectively be precluded from consummating a civil action against the officer. **Accordingly, we hold that where an officer executes a warrant, and believes in good faith that the person taken into custody is the person named in the warrant, the officer will not be civilly liable in an action for false imprisonment absent circumstances tending to suggest that the wrong person has been arrested.**

*Barnes*, at 450 N.E.2d at1033 (emphasis supplied).

In the present case, as noted in the federal analysis above, the Jefferson County Superior Court warrant matched the name, address, and birthdate of the Plaintiff and was enough to book her into the Grant County Jail after the arrest by Marion Police Officer Coburn despite the Plaintiff's claims of mistaken identity. Unfortunately, as the courts have noted repeatedly, unwarranted claims of mistaken identity by individuals who are arrested are all too common. *See e.g. Hill*, 401 U.S. at 803 ("aliases and false identifications are not uncommon" in this context). In this case there was a validly issued warrant, and:

> Officers "executing an arrest warrant ... [are not] required ... to investigate independently every claim of innocence, [even when] the claim is based on mistaken identity," *Baker v. McCollan*, 443 U.S. 137, 145–46, 99 S.Ct. 2689, 61 L.Ed.2d 433 (1979), and the information available to Geier and Shirah supported

15

> a "reasonable, good faith belief" that Williams was Braxton, *Hill*, 401 U.S. at 802, 91 S.Ct. 1106. Because the officers reasonably mistook Williams for his brother, they were immune from Williams's complaint of a false arrest.

*Williams v. City of Montgomery*, 839 F. App'x 356, 361 (11th Cir. 2020).

Any claim that Ms. Morrow's protestations of innocence alone (all that is pled in the Complaint on this issue) overcome the good faith defense should be rejected, where, as here, according to Ms. Morrow's own Complaint, when the Jefferson County Superior Court opened on Monday the warrant was cleared and she was released from the Grant County Jail by 3:00 pm that same day.

### 2. Intentional Infliction of Emotional Distress.

In Count I of the Complaint the Plaintiff alleges that "Sheriff Nevels was acting within the scope of his employment with GCSO when he held Morrow at the Grant County Jail" and that he "failed to consult public information which would have readily demonstrated that Morrow is not the Cheyenne Morrow for which the arrest warrant was intended to be issued", therefore his "actions constituted extreme and outrageous conduct that constitutes intentional or reckless severe emotional harm to Morrow." (Complaint, ¶¶ 64-67)  Leaving aside the pleading and capacity problems, this claim as pled simply fails to state a claim for which relief can be granted under Indiana law.

The Indiana Supreme Court first recognized the tort of intentional infliction of emotional distress or "IIED" in *Cullison v. Medley*, 570 N.E.2d 27 (Ind. 1991) noting that "[t]he definition of the tort of intentional infliction of emotional distress is that 'one who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress....' Restatement (Second) of Torts § 46 (1965). It is the intent to harm one emotionally that constitutes the basis for the tort of an intentional

16

infliction of emotional distress." *Id.*, 570 N.E.2d at 31. However, having recognized the existence of the tort the Indiana Supreme Court found that the conduct at issue in that case did not meet the very high bar set out.

Further defining the tort, the Indiana Court of Appeals in *Bradley v. Hall*, 720 N.E.2d 747 (Ind.Ct.App. 1999) noted as follows:

> Liability for intentional infliction of emotional distress is found only if there is extreme and outrageous conduct. The comments to the Restatement, Section 46 read: d. *Extreme and outrageous conduct*. The cases thus far decided have found liability only where the defendant's conduct has been extreme and outrageous. It has not been enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by "malice," or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort. Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, "Outrageous!" Restatement (Second) of Torts § 46 (*quoted in Gable v. Curtis*, 673 N.E.2d 805, 809 (Ind.Ct.App.1996)).

*Id.*, 720 N.E.2d at 752–53. Applying this standard: "IIED therefore is found where conduct exceeds all bounds typically tolerated by a decent society and causes mental distress of a very serious kind. *Lindsey v. DeGroot*, 898 N.E.2d 1251, 1264 (Ind.Ct.App. 2009)." *Westminster Presbyterian Church of Muncie v. Yonghong Cheng*, 992 N.E.2d 859, 870 (Ind.Ct.App. 2013).

The simple fact, as discussed extensively above, is that the conduct of the GCSO and its deputies is not even alleged to have been intended to cause emotional distress to Ms. Morrow, much less as being outrageous or the type of "conduct [that] exceeds all bounds typically tolerated by a decent society". At best, as alleged in the Complaint, it was a mistake made by the Jefferson County Superior Court, and "this unfortunate case of mistaken identity" (*Martinez*, at

\*8) resulted in a valid warrant that the GCSO and its deputies relied upon in booking Ms. Morrow into the Grant County Jail.

There is absolutely no legal basis for an IIED claim against Sheriff Nevels, the GCSO, or its deputies and Count I should be dismissed as against them.

**D.    Punitive damages are barred as a matter of law against the GCSO, as well as Deputies Flanigan and Brand in their official capacities under federal law, as well as entirely on the state law claims based on the Indiana Tort Claims Act.**

In the Prayer for Relief, the Plaintiff seeks, among other things, that the Court "award him[sic] compensatory damages and punitive damages".  However, even assuming liability the availability of punitive damages in cases like this is extremely limited under both state and federal law.

*i.    Federal Law.*

With respect to the federal claims brought under 42 U.S.C. § 1983, any punitive damages claim brought against a municipal Defendant such as the GCSO or its deputies in their official capacities must be dismissed.  *See e.g. City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 271 (1981) ("a municipality is immune from punitive damages under 42 U.S.C. § 1983"); *see also Minix v. Canarecci*, 597 F.3d 824, 830 (7th Cir. 2010) (observing that the plaintiff could not recover punitive damages from the county sheriff in his official capacity because municipalities are immune from punitive damages in § 1983 suits); and *Herrick v. Standard*, 2020 WL 7480727, at \*2 (C.D.Ill. 2020) (collecting cases)..

Thus any claim for punitive damages under federal law sought against the GCSO and Deputies Flanigan and Brand in their official capacities are barred as a matter of law.

*ii.     State Law.*

I.C. § 34-13-3-4 is entitled "Limitation on aggregate liability; punitive damages prohibited" and provides, in pertinent part, that "a governmental entity or an employee of a governmental entity acting within the scope of employment is not liable for punitive damages." *See also Cantrell v. Morris*, 849 N.E.2d 488, 506 (Ind. 2006) ("The ITCA imposes statutory limitations on compensatory damages and, like the FTCA, prohibits an award of punitive damages against a governmental entity or an employee of a governmental entity acting within the scope of employment. I.C. § 34–13–3–4(b); cf. 28 U.S.C. § 2674."); *Durham ex rel. Estate of Wade v. U-Haul Int'l*, 745 N.E.2d 755, 762 (Ind. 2001) Noting that "[I.C.] § 34–13–3–4 (Tort Claims Act bars punitive damages)").

As a consequence of the express provisions of I.C. § 34-13-3-4 the Plaintiff's claims for punitive damages against the GCSO and its deputies are entirely barred to the extent sought on the state law claims.

### V.     Conclusion.

For the foregoing reasons, the Defendants, the Grant County Sheriff's Office, Deputy Flanigan and Deputy Brand, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, respectfully request that the Court dismiss the Plaintiff's Complaint as it fails to state a claim for which relief can be granted as against them, together with all other just and proper relief in the premises.

FROST BROWN TODD LLC

By: */s/ Thomas E. Wheeler, II*
    Thomas E. Wheeler, II, #13800-49

    Attorneys for Defendants Deputy Flanigan, Deputy Brand and the Grant County Sheriff's Office

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on this 19th day of August, 2021, a copy of the foregoing was filed electronically. Notice of this filing will be sent to the following parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system:

Andrea L. Ciobanu, Esq.
CIOBANU LAW, P.C.
902 E. 66th Street
Indianapolis, Indiana 46220
Email: aciobanu@ciobanulaw.com

>  */s/ Thomas E. Wheeler, II*
>  Thomas E. Wheeler, II

FROST BROWN TODD LLC
201 North Illinois Street, Suite 1900
P.O. Box 44961
Indianapolis, IN  46244-0961
317-237-3800
Fax: 317-237-3900
twheeler@fbtlaw.com

0000T69.0745978   4849-4627-9412v1